UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | | |
|---|---|---|
| WESLEY D. THOMPSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 2:17-cv-00051-JMS-DLP |
| | ) | |
| GOSS, | ) | |
| SMITH, | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER GRANTING MOTION FOR SUMMARY JUDGMENT ON EIGHTH AMENDMENT CLAIMS, RELINQUISHING SUPPLEMENTAL JURISDICTION OVER STATE LAW CLAIMS, AND DIRECTING ENTRY OF FINAL JUDGMENT**

This action is before the Court for resolution of the defendants' motion for summary judgment, dkt. 56. For the reasons set forth below, the Court **grants** the motion as to the plaintiff's Eighth Amendment claims and declines to continue exercising supplemental jurisdiction over the plaintiff's remaining state law claims.

### I. Summary Judgment Standard

A motion for summary judgment asks the Court to find that a trial is unnecessary because there is no genuine dispute as to any material fact and, instead, the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). Whether a party asserts that a fact is undisputed or genuinely disputed, the party must support the asserted fact by citing to particular parts of the record, including depositions, documents, or affidavits. Fed. R. Civ. P. 56(c)(1)(A).

On summary judgment, a party must show the Court what evidence it has that would convince a trier of fact to accept its version of the events. *Gekas v. Vasilades*, 814 F.3d 890, 896 (7th Cir. 2016). The moving party is entitled to summary judgment if no reasonable fact-finder

could return a verdict for the non-moving party. *Nelson v. Miller*, 570 F.3d 868, 875 (7th Cir. 2009). The Court views the record in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *Skiba v. Illinois Cent. R.R. Co.*, 884 F.3d 708, 717 (7th Cir. 2018). It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the fact-finder. *Miller v. Gonzalez*, 761 F.3d 822, 827 (7th Cir. 2014). The Court need only consider the cited materials, Fed. R. Civ. P. 56(c)(3), and the Seventh Circuit Court of Appeals has repeatedly assured the district courts that they are not required to "scour every inch of the record" for evidence that is potentially relevant to the summary judgment motion before them. *Grant v. Trustees of Indiana University,* 870 F.3d 562, 573-74 (7th Cir. 2017). Any doubt as to the existence of a genuine issue for trial is resolved against the moving party. *Ponsetti v. GE Pension Plan*, 614 F.3d 684, 691 (7th Cir. 2010).

## II. Facts

The following factual background is set forth pursuant to the standards detailed in Part I. The facts stated are not necessarily objectively true, but as the summary judgment standard requires, the undisputed facts and the disputed evidence are presented in the light most favorable to "the party against whom the motion under consideration is made." [*Premcor USA, Inc. v. American Home Assurance Co.*, 400 F.3d 523, 526-27 (7th Cir. 2005)](#).

In April 2015, Wesley Thompson was assigned to Cell C-12 in the disciplinary restrictive housing unit (DRHU) at the Putnamville Correctional Facility. Dkt. 57-3 at 13:17–14:7. C-12 featured a window on one wall just above the head of the bed. Dkt. 57-4.

When Mr. Thompson moved into C-12, there was a hole in the screen covering the window's lower pane. The hole appeared to be have been created by tearing out a portion of the screen. As a result, the portion of the screen forming the hole's perimeter was frayed and extended

approximately three or four inches inward from the wall toward the space above Mr. Thompson's bed. *See* dkt. 57-3 at 12:6–13:16, 48:6–16.

Sometime between the date Mr. Thompson moved into C-12 and May 13, 2015, he notified Lieutenant Gary Goss of the hole in the window screen. *See id.* at 35:8–36:20. Lt. Goss stated that he would report the torn screen to the facility's maintenance staff. *See id.* at 36:21–37:4.

The month before Mr. Thompson was assigned to C-12, Lt. Goss placed C-12 on "deadline status." Dkt. 64-1 at 23. When prison staff place a cell on deadline status, it may not be used until it is inspected and all necessary repairs or corrections are completed. Dkt. 57-2 at ¶ 11. In March 2015, Lt. Goss placed C-12 on deadline status because the mirror was "bent up." Dkt. 64-1 at 23. However, Lt. Goss did not place C-12 on deadline status after Mr. Thompson notified him of the torn window screen.

As of May 13, 2015, the screen still had not been repaired or replaced. That afternoon, Mr. Thompson was looking out the window with his left arm resting on the metal ledge separating the upper and lower panes. When Mr. Thompson turned away from the window, his wrist scraped against the frayed portions of the lower window screen and began bleeding. *See* Dkt. 57-3 at 8:6–10:14, 11:13–12:3, 15:18–25. On May 14, 2015, Lt. Goss placed C-12 on deadline status, contacted maintenance staff to repair the screen, and reassigned Mr. Thompson to C-11. Dkt. 57-2 at ¶¶ 9–11.

During the entire time Mr. Thompson was confined to C-12, Defendant Brian Smith was the Superintendent of the Plainfield Correctional Facility. Mr. Smith did not assume his duties as Superintendent of the Putnamville Correctional Facility until May 24, 2015. Dkt. 57-1 at ¶¶ 2–3.

Mr. Thompson filed this lawsuit on January 31, 2017. After screening Mr. Thompson's amended complaint, the Court directed that this action proceed with claims that Defendants Smith

and Goss were deliberately indifferent to Mr. Thompson's safety in violation of the Eighth Amendment and negligent under Indiana law. *See* dkts. 11, 29. The defendants now seek summary judgment on all claims.

### III. Eighth Amendment Claims

Construing the facts in Mr. Thompson's favor as the non-movant, the defendants are entitled to judgment as a matter of law on the Eighth Amendment claims. Because the Court finds it prudent to relinquish its supplemental jurisdiction over the remaining state law claims, the Court will direct that all claims be dismissed

**A.      Eighth Amendment Standard**

The Eighth Amendment requires prison officials to provide inmates with humane conditions of confinement, meaning they must take reasonable measures to guarantee the safety of the inmates and ensure that they receive adequate food, clothing, shelter, and medical care. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). A prison official breaches this constitutional duty only if he "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. "The Eighth Amendment does not outlaw cruel and unusual 'conditions'; it outlaws cruel and unusual 'punishments.'" *Id.* "[A]n official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment." *Id.* at 838. Therefore, "[n]egligence or even gross negligence on the part of officials is not sufficient for liability; their actions must be intentional or criminally reckless." *Bell v. Ward*, 88 F. App'x 125, 127 (7th Cir. 2004) (citing *Farmer,* 511 U.S. at 837).

**B.      Claim Against Mr. Smith**

Mr. Smith played no role in the events leading to Mr. Thompson's injury. In fact, for the entire duration of Mr. Thompson's stay in C-12, Mr. Smith worked at a different prison. Individual liability under 42 U.S.C. § 1983 "requires personal involvement in the alleged constitutional deprivation." *Colbert v. City of Chicago,* 851 F.3d 649, 657 (7th Cir. 2017) (internal quotation omitted). Because Mr. Smith was not personally involved in the events leading to Mr. Thompson's injury, he is entitled to judgment as a matter of law on the Eighth Amendment claim.

## C.     Claim Against Lt. Goss

Lt. Goss was directly involved in the events leading to Mr. Thompson's injury. Mr. Thompson notified Lt. Goss of the torn screen when he moved into C-12. Additionally, Lt. Goss placed C-12 on deadline status in March 2015 and then placed C-12 back on deadline status, arranged for the screen to be replaced, and assigned Mr. Thompson to a new cell after the incident. These facts suggest that Lt. Goss was aware of the damaged screen and that he was responsible both for ensuring its repair and for Mr. Thompson's cell assignment. Therefore, the Court must consider whether Lt. Goss knew of and disregarded an excessive risk to Mr. Thompson's safety.

The defendants liken Mr. Thompson's window screen to a wet floor upon which an inmate slips and falls. "Although wet floors do present a possibility that inmates might slip," federal courts have found that they do not present "a *substantial* risk of serious harm that reflects the deliberate indifference required to impose liability under the Eighth Amendment." *Bell*, 88 F. App'x at 127 (emphasis in original); *Pyles v. Fahim*, 771 F.3d 403, 410 (7th Cir. 2014) ("Federal courts consistently have adopted the view that slippery surfaces and shower floors in prisons, without more, cannot constitute a hazardous condition of confinement."); *LeMaire v. Maass*, 12 F.3d 1444, 1457 (9th Cir. 1993) ("slippery prison floors . . . do not state even an arguable claim for cruel and unusual punishment") (internal quotation marks and citation omitted).

Mr. Thompson urges the Court to distinguish his case from the "wet floor" cases because of the size of C-12 and the nature of his confinement to it. Mr. Thompson had no choice in his assignment to C-12, and he says he was required to spend 23–24 hours per day there. Given the small size of the cell, he says he could not really avoid the torn window screen.

The Court finds that Lt. Goss could reasonably have concluded that, despite the small size of the cell, Mr. Thompson could avoid contact with the window screen easily enough that it did not present an excessive risk of serious injury. Although C-12 was small, the frayed portion of the screen reached into the room only three or four inches. Moreover, the window was positioned in a location—directly above his bed—where Mr. Thompson would have had to go out of his way to come into contact with the screen. Lt. Goss knew that Mr. Thompson was aware of the torn screen because Mr. Thompson alerted him to it. Knowing that Mr. Thompson was aware of the condition and that he would have been unlikely to come close to the screen unintentionally, it would not have been reckless for Lt. Goss to determine that Mr. Thompson could remain in C-12 without facing a serious risk of injury while waiting for the screen to be replaced.

For this reason, the Court finds Mr. Thompson's case most similar to *Carroll v. DeTella*, 255 F.3d 470 (7th Cir. 2001). Carroll complained that water he consumed at two Illinois prisons was contaminated with lead and radium. *Id.* at 471. The Seventh Circuit found that the water in one prison, although contaminated with lead, was safe to drink after allowing the tap to run for a few minutes. *Id.* at 472. This, the court found, "eliminates the hazard, though it is only an interim precaution while the prison arranges to have the pipes treated or replaced. All this is remote from cruel and unusual punishment." *Id.* Just as Carroll could take a simple precaution to avoid the lead in his tap water, Mr. Thompson could have taken a simple precaution to avoid coming too close to the window screen until it could be replaced.

Running the tap could not allow Carroll to escape exposure to the radium in his water at the other prison, but the Seventh Circuit found that the relatively low concentration made any risk of injury too low to implicate the Eighth Amendment. *Id.* at 472–73. The Eighth Amendment does not require prison officials to "provide a maximally safe environment, one completely free from pollution or safety hazards." *Id.* at 472. "Prison officials do not demonstrate that deliberate indifference to the inmates' welfare which is the sine qua non of cruel and unusual punishment when they refuse to take measures against hazards that they reasonably believe to be nonexistent or slight." *Id.* at 473. Even viewed in the light most favorable to Mr. Thompson, the evidence before the Court would have made it reasonable for Lt. Goss to conclude that Mr. Thompson's likelihood of contacting the screen was low and that any resulting injury would likely be slight.

The Seventh Circuit has found summary judgment inappropriate in cases where plaintiffs have been required by the conditions of their confinement to directly contact more dangerous materials. *See, e.g.*, *Bratchett v. Braxton Environmental Servs.*, 564 F. App'x 229 (7th Cir. 2014) (involving plaintiff whose mandatory work-release job required him to handle wires and tire-shredding machinery without protective equipment or safety training); *Hall v. Bennett*, 379 F.3d 462 (7th Cir. 2004) (involving plaintiff whose assigned prison job required him to strip live, high-voltage wires without protective gloves). If the evidence allowed for the possibility that contact with the screen was unavoidable, this case might be different. But the evidence, even construed in Mr. Thompson's favor, indicates that it was reasonable for Lt. Goss to determine that Mr. Thompson could live in C-12 without facing a significant risk of contacting the window screen. As such, no reasonable fact-finder could determine that Lt. Goss's failure to assign Mr. Thompson to a different cell or repair the window screen more promptly was deliberately indifferent.

**IV. State Law Negligence Claims**

Mr. Thompson's negligence claims are rooted in Indiana law. Because they were joined with his Eighth Amendment claims, the Court exercised supplemental jurisdiction over them pursuant to 28 U.S.C. § 1367. With both Eighth Amendment claims dismissed, the Court must determine whether it is appropriate to continue to exercise supplemental jurisdiction over the state-law claims. For the reasons that follow, the Court relinquishes supplemental jurisdiction over Mr. Thompson's negligence claims and dismisses them without prejudice.

The Court has discretion whether to exercise supplemental jurisdiction over a plaintiff's state-law claims. *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009); *see* 28 U.S.C. § 1367(c) ("The district courts may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction . . . ."). When deciding whether to exercise supplemental jurisdiction, "'a federal court should consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity.'" *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 173 (1997) (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988)).

The Seventh Circuit has made clear that "the usual practice is to dismiss without prejudice state supplemental claims whenever all federal claims have been dismissed prior to trial." *Groce v. Eli Lilly*, 193 F.3d 496, 501 (7th Cir. 1999); *see Sharp Electronics v. Metropolitan Life Ins.*, 578 F.3d 505, 514 (7th Cir. 2009) ("Normally, when all federal claims are dismissed before trial, the district court should relinquish jurisdiction over pendent state-law claims rather than resolving them on the merits.") (citation and quotation marks omitted). Exceptions to the general rule exist: "(1) when the statute of limitations has run on the pendent claim, precluding the filing of a separate suit in state court; (2) substantial judicial resources have already been committed, so that sending the case to another court will cause a substantial duplication of effort; or (3) when it is absolutely

clear how the pendent claims can be decided." *Davis v. Cook Cnty.*, 534 F.3d 650, 654 (7th Cir. 2008) (quoting *Wright v. Associated Ins. Cos.*, 29 F.3d 1244, 1251 (7th Cir. 1994)) (internal quotation marks omitted).

The Court finds no reason to deviate from the usual practice in this case. The statute of limitations will not have run on Mr. Thompson's state-law claims, as both federal and state law toll the relevant limitations period when claims are pending in a civil action (except in limited circumstances not present here). *See* 28 U.S.C. § 1367(d); Ind. Code § 34-11-8-1; *see also Hemenway v. Peabody Coal Co.*, 159 F.3d 255, 266 (7th Cir. 1998). The Court has not expended significant resources on the pending state-law claims. The Court does not expect that the parties' efforts with respect to the state law claims in discovery and briefing will go to waste; the evidence and legal research that would have been relevant in a federal case should be every bit as relevant in a state-court proceeding. The Court decided the Eighth Amendment claims on the deliberate-indifference element, which is not at issue in the negligence claims. Finally, as always, comity favors allowing state courts to decide issues of state law.

For these reasons, the Court exercises its discretion to relinquish supplemental jurisdiction over the remaining state-law claims.

## V. Conclusion

The defendants' motion for summary judgment, dkt. [56], is **granted** insofar as the Court grants judgment as a matter of law in the defendants' favor on the Eighth Amendment claims. The Court exercises its discretion to relinquish supplemental jurisdiction over the remaining state-law claims.

Mr. Thompson's motion seeking an update on the status of this action, dkt. [67], is **granted**. This order provides the information requested in that motion.

Final judgment consistent with this order shall now issue. Mr. Thompson's Eighth Amendment claims are **dismissed with prejudice**, and his negligence claims are **dismissed without prejudice**.

**IT IS SO ORDERED.**

Date: 11/13/2018

Hon. Jane Magnus-Stinson, Chief Judge
United States District Court
Southern District of Indiana

Distribution:

WESLEY D. THOMPSON
232254
WABASH VALLEY - CF
WABASH VALLEY CORRECTIONAL FACILITY - Inmate Mail/Parcels
Electronic Service Participant – Court Only

David C. Dickmeyer
INDIANA ATTORNEY GENERAL
David.Dickmeyer@atg.in.gov

Ryan Joseph Sterling
INDIANA ATTORNEY GENERAL
ryan.sterling@atg.in.gov